(C. D. 672)

BORDER BROKERAGE CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided July 27, 1942)

Lawrence & Tuttle (*Charles F. Lawrence* and *George R. Tuttle* of counsel) for the plaintiff.

Paul P. Rao, Assistant Attorney General (*James F. Donnelly* and *William J Vitale*, special attorneys), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: These are suits against the United States, arising at the port of Seattle, brought to recover certain customs duties alleged to have been improperly exacted upon particular importations of merchandise consisting of certain photographic equipment, a public address system, developed positive films, and several phonograph records. Duty was levied on the photographic equipment and public address system at the rate of 35 per centum ad valorem under paragraph 353 of the Tariff Act of 1930; on the positive films, at the rate of 1 cent per linear foot under paragraph 1551 of said act; and on the phonograph records at the rate of 30 per centum ad valorem under paragraph 1542 of said act.

It is claimed that all of said merchandise is properly entitled to free entry under paragraph 1808 of said act, or, alternatively, paragraph 1747 of said act. The latter paragraph reads:

PAR. 1747. Professional books, implements, instruments, and tools of trade, occupation, or employment in the actual possession of persons emigrating to the United States owned and used by them abroad; but this exemption shall not be construed to include machinery or other articles imported for use in any manufacturing establishment, or for any other person or persons, or for sale, nor shall it be construed to include theatrical scenery, properties, and apparel; but such articles brought by proprietors or managers of theatrical exhibitions arriving from abroad, for temporary use by them in such exhibitions, and not for any other person, and not for sale, and which have been used by them abroad, shall be admitted free of duty under such regulations as the Secretary of the Treasury may prescribe; but bonds shall be given for the payment to the United States of such duties as may be imposed by law upon any and all such articles as shall not be exported within six months after such importations: *Provided,* That the Secretary of the Treasury may, in his discretion, extend such period for a further term of six months in case application shall be made therefor.

Article 437 of the Customs Regulations of 1937, made in pursuance of said paragraph 1747, reads as follows:

ART. 437. Theatrical effects.—(a) In connection with the entry of the theatrical scenery, property, and apparel an affidavit of the manager or proprietor will be required on customs Form 3325 in addition to the requirements of article 435.

\*      \*      \*      \*      \*      \*      \*

(c) The term "theatrical scenery, properties, and effects" does not include moving-picture films.

Inasmuch as it is conceded that said regulations were not complied with by the importer, we need not consider the claim alleged under said paragraph 1747.

Paragraph 1808, which is the claim chiefly relied on by the plaintiff, reads as follows:

PAR. 1808. Works of art, drawings, engravings, photographic pictures, and philosophical and scientific apparatus brought by professional artists, lecturers, or scientists arriving from abroad for use by them temporarily for exhibition and in illustration, promotion, and encouragement of art, science, or industry in the United States, and not for sale, shall be admitted free of duty, under such regulations as the Secretary of the Treasury shall prescribe; but bonds shall be given for the payment to the United States of such duties as may be imposed by law upon any and all such articles as shall not be exported within six months after such importations: *Provided,* That the Secretary of the Treasury may, in his discretion, extend such period for a further term of six months in cases where application therefor shall be made.

It appears from the papers that upon the importation of the merchandise at bar bonds were duly given in accordance with the provisions of said paragraph 1808, but that in advance of the expiration of the 6 months' period the entries were liquidated and duties assessed.

At the hearing, held at Seattle on July 9, 1941, before Walker, Judge, the plaintiff offered in evidence the testimony of Kaizo Tsuyuki, a lecturer and moving picture agent residing in Vancouver, B. C. He testified in part as follows:

Q. The papers here before the court relate to merchandise imported at Blaine, Washington, by the Border Brokerage Co. for your account; and do you know the kind of merchandise that is covered by these invoices? Do you know what it was? —A. Yes.

  *   *   *   *   *   *   *

Q. Just describe it.—A. In October, 1939—the next I forget what date it was— 1940, that is twice; and each time, motion picture film, 16 millimeter, silent film, 2 projectors, public recording system, using for my lecture, some gramophone records; maybe some more.

Q. Was there an amplifier?—A. Amplifier, public recording system.

Q. Yes. And did you import that here into this country, into the United States, that is, you brought it into this country, did you?—A. Yes, I brought it myself.

Q. And after it came to the United States did you use it here?—A. Yes.

Q. Now tell us where you used this equipment, please.—A. Japanese Hall.

Q. What city?—A. Seattle.

Q. In any other city, also?—A. Portland.

Q. Portland, Oregon?—A. Yes.

Q. And how did you use it; * . * *?—A. On using film we need the projector to run the film, and showing that film, and also put some music on, using gramophone with amplifier. Also, I make some lecture, too, to young people.

Q. Did you give a lecture in Portland and Seattle?—A. Yes.

Q. Using this equipment?—A. Yes.

Q. And did you at that same time use the films to show a certain picture?—A. Yes.

Q. Do you know what the title of the picture was?—A. Yes.

Q. Would you tell me, please?—A. One, Tatsumono Kiroku.

Q. Tell me the English name.—A. Historical drama of Japan.

* * * * * * *

Q. And was there any other picture?—A. Yes.

Q. What was the name of that in English?—A. The Vacation Days of School.

Q. Now, the first picture, Historical drama of Japan, just tell me briefly what that subject matter was, that is, what it covered.—A. A story about nearly 60 years ago in Japan when the western people, American or English people, came, and Japan and Japanese people changing, modern Japan.

Q. Was it a picture * * * of events that occurred in Japan * * * about 60 years ago when Admiral Perry * * * first went there; is that right?—A. Yes, * * *.

Q. And did it show the life of the Japanese people, their manner of living during that time?—A. Yes.

* * * * * * *

Q. * * *. Was the group that you showed it to * * * 'The American-born Japanese Boy Scouts Association?—A. Yes, that is right.

Q. And after you finished with your lecture and finished showing the picture did you then go back to Canada?—A. Yes.

Q. And did you take with you this equipment?—A. Yes.

Q. And all of the articles covered by the entry?—A. Yes.

* * * * * * *

Q. * * *. Well, now, one of these entries was made in October, 1939; * * *. Did you take that out of the United States?—A. Yes.

Q. Prior to January, 1940?—A. Well, I take out from United States the first day, maybe first week of November, 1939.

* * * * * * *

Q. The second one you imported in January, 1940?—A. Yes.

Q. About when did you take that back to Canada?—A. Well, within one week. * * *.

On cross-examination the witness testified in part as follows:

* * * * * * *

X Q. You are a resident of Canada?—A. Yes.

X Q. And every time you come over here you come in as a visitor?—A. Visitor.

* * * * * * *

X Q. And as a result of showing these pictures to the Fencing Society and to the Japanese Boy Scouts did you sell copies of those films here?—A. No.

X Q. Did you sell any records?—A. No.

* * * * * * *

X Q. In Protest 41323–K there is a letter contained in the papers, and I show you this letter and ask you if it is in your handwriting?—A. That is my secretary's writing.

X Q. Did you sign that letter? * * *—A. Yes, I did.

X Q. Do you know whether that letter was sent to the addressee up here?—A. Yes.

The letter was then received in evidence and marked defendant's exhibit 1. At the same time the letter of transmittal from the deputy collector at Blaine to the deputy collector at Seattle transmitting exhibit 1 was admitted in evidence as defendant's exhibit 2.

The letter of transmittal (exhibit 2) reads as follows:

Blaine, Washington, *January 11, 1940.*

Collector of Customs,
Seattle, Washington.

Sir:

Transmitting herewith Six Months Bond Entry No. 13–E with a statement from the importer as to what the films depict and the use together with completed forms No. 3579.

It appears to this office that the subject matter of the films would come under Par. 1808 but the places of exhibition and the purpose seem to be to promote the cultural life of Japan among the American born Japanese.

Mr. Tsuyuki intends to enter soon with more film and records as we received a triplicate invoice today made the 9th instant.

Would like to receive an early reply from your office as it is our present opinion to require a straight consumption entry on the next importation or bond it to your port.

Respectfully,

J. S. MYERS,
*Deputy Collector in Charge*
by L. J. PIKE,
*Inspector.*

The letter from the importer (exhibit 1) reads as follows:

*January 8, 1940,*
336 E. Cordova St.,
Vancouver, B. C., Canada.

Mr. C. S. Holmes,
Border Brokerage Co.,
Blaine, Wash., U. S. A.

Dear Sir:

I shall answer your letter of Dec. 30, 1939 in the following manner.

(1) Pictures consist of historical, social, educational and current matters of Japan, shown with moving picture projector. I do the interpreting of them.

(2) At the places where Japanese Religious or Educational bodies asked to show them for their benefits. In the past I have shown at Seattle, Tacoma and Portland.

(3) To promote better understandings among the old and new Japanese generations.

I hope I have answered your questions to your satisfaction.

I remain

K. TSUYUKI.

On redirect examination the witness testified in part as follows:

R. Q. Was it an American-made projector?—A. Yes.

R. Q. And tell me when, that is, the year that you bought it?—A. About nearly 10 years ago.

Mr. DONNELLY. There are two projectors on one of the entries.

By Mr. TUTTLE:

R. Q. And did you buy both of them in Canada?—A. Yes.

R. Q. And both of them about 10 years ago?—A. Yes.

R. Q. And each time you have come to the United States since then to give these lectures you have had the same projection machines?—A. Yes, same projectors.

At the close of this witness's testimony it was agreed by and between counsel for the respective parties in open court that the memorandum attached to the summary sheet and which is signed "Pike" was prepared by Mr. Pike, deputy collector at Blaine, Wash., and the reply thereto addressed to Mr. Pike was signed by Mr. Ogden, acting chief liquidator, now deputy collector in charge of liquidation, at the port of Seattle.

Counsel for the plaintiff then offered the memorandum which was received in evidence as plaintiff's exhibit 3.

An examination of the summary sheet attached to the invoice in protest 41324–K has affixed to it the following memorandum signed by L. J. Pike, acting appraiser:

Blaine, Washington, *1/15/40*

The merchandise on this entry 6 Mo. bond No. 20–E is the same line as on 6 Mo. bond No. 13–E which was returned to this office for information as to its admission under Par. 1808.

In my reply I stated that we would assess duty on the next importation unless we heard from you to the contrary prior to the next entry. Mr. Tsuyuki came in Saturday about noon and I told him there was some doubt about the admissibility under 1808 and that we would have to collect the duty. He did not have the money and had a lecture on in Seattle Saturday night and Sunday; he called his people in Seattle relative to trying to call the meeting off but was told there was not time to inform those intending to be present.

As he had had no notice of a change in practice I decided to admit it under bond with the understanding that it might be subject to straight duty.

PIKE.

Mr. Pike:,

This entry will be liquidated dutiable. See the last sentence of office letter dated Jan. 16, 1940, file 8–704.

JESSE G. OGDEN,
*Acting Chief Liquidator.*

At the second hearing, held at Seattle on July 10, 1941, also before Walker, Judge, the Government offered in evidence the testimony of Jesse G. Ogden, who testified in part as follows:

Q. Mr. Ogden, what is your occupation?—A. I am Deputy Collector of Customs, in charge of the liquidating Division in the Port of Seattle.

Q. How long have you been so employed?—A. For one year.

Q. And prior to that time what were your duties?—A. For approximately 9 months, Acting Chief Liquidator at virtually the same post; and prior to that, Senior Liquidator, in the same port, in the same office.

Q. For how many years?—A. For approximately 4 years; and prior to that, liquidator for 16 years.

Q. I show you the 6 months bond entries involved in Protests 41323–K and 41324–K, and ask you whether or not you liquidated these entries?—A. Personally, I did not liquidate them, but may I state who did?

Q. Yes, if you know.—A. The initial "J" in each case indicated that they were liquidated by Senior Liquidator, Edward R. Jones, an employee in my Division.

Q. Was he acting under your direction and supervision at the time?—A. He was at the time.

Q. Now, Mr. Ogden, it has been made an issue in this case that a change of practice resulted in connection with the importation of this type of film and this type of merchandise without notice to the importer. Do you have with you any records of importations of like merchandise imported under the same circumstances prior to the time of the entries in question?—A. Virtually the same type of importation—the answer is, yes, I have, yes.

Q. Was the importation by the same importer whose name appears upon the entries in the cases at bar?—A. No, it does not appear to have been the same importer.

Q. The prior entry to which you have reference, what was the name of the importer in that entry?—A. The document shows merchandise to have been imported by Tadao Yasuda.

Q. And have you a copy of that entry made by that Tadao Yasuda?—A. I have the original entry.

[Entry was marked defendant's exhibit 4 for identification.]

Q. Yes. Now, when was that Exhibit 4 for Identification liquidated?—A. On October 5, 1939.

Q. Were duties assessed upon that merchandise?—A. Yes, duties were assessed.

\*       \*       \*       \*       \*       \*       \*

Q. Well, then I will ask you specifically was your reason, Mr. Ogden, that you considered that Paragraph 1808 only covered merchandise of the character described therein when used in the encouragement of art, science or industry in the United States, that is, showing, in the case of pictures, or depicting industry in the United States?—A. The reason was this, that not because they were moving pictures, nor not because of the type of moving pictures, but because imported by the title of the pictures themselves would not indicate that they were for the purpose of encouragement of art, science or industry in the United States.

Q. Well, just so I will understand clearly, do you and did you consider that before articles are free of duty, under Paragraph 1808, they must, in the case of pictures, have as their subject in one case industry as carried on in the United States or art as carried on in the United States, or the third, science as carried on in the United States?—A. Not necessarily, no. That wouldn't have to necessarily be the subject.

\*       \*       \*       \*       \*       \*       \*

Q. The reason I ask, Mr. Ogden, is that a broker here has advised me and did advise me yesterday that the plaintiff in this particular case imported identical merchandise at Seattle in 1937, that is, at the port of Seattle proper, and it was passed free.—A. Well, I would rather think that that is true. I think that that is true, that the importer of merchandise under consideration previously did import some merchandise free of duty under Paragraph 1808.

Defendant's exhibit 4 for identification was then admitted in evidence as defendant's exhibit 4.

Attached to the temporary exhibition bond entry (defendant's exhibit 4) is the following declaration on customs Form 3333:

Port of Seattle, Washington,
*August 8, 1939.*

I, Tadoa Yasuda, do solemnly swear that I am a lecturer arriving from abroad, and that the articles covered by the annexed entry are brought by me to the United States for use by me for temporary exhibition and in illustration, promotion, and encouragement of art, science, or industry in the United States, and not for sale.

TADAO YASUDA.

Subscribed and sworn to before
me this 8 day of August, 1939
    JOHN P. HAUSMAN,
        *Notary Public*

On the face of said exhibit 4 occurs the following notation in red ink: "Not entitled to entry under P. 1808, 6671 lin. ft. 1¢ ft. $66.71, No change, 0." There also appears in purple ink: "Oct. 5, 1939, Liquidated."

Upon this record counsel for the Government in his brief filed herein contends that paragraph 1808 of the Tariff Act of 1930 is not applicable to the facts in this case, on the ground that the motion-picture films at bar were designed to appeal only to a limited group of people in this country, and that a correct interpretation of the paragraph implies that the use of the imported article must be for the benefit of American art, science, or industry.

But as pointed out by counsel for the plaintiff in their brief filed herein such a construction is manifestly erroneous. The phrase "in the United States" manifestly refers merely to the place where the imported articles are to be used rather than the location of the arts, sciences, and industry which are intended to be encouraged. It would be hard to imagine works of art, drawings, engravings, photographic pictures, etc., illustrating American art unless they were produced in the United States in the first place. In that event they would have had to have been formerly exported from the United States and then returned to this country. In our opinion, paragraph 1808 was intended to have a much broader scope.

In the case of *Leland Stanford Junior University* v. *United States*, T. D. 13875, G. A. 2028, this court (then the Board of General Appraisers) held that certain articles of silk wearing apparel, jewelry, swords, court robes, and other articles forming a collection of curiosities and of objects indicating the life of the people of Korea, imported in good faith for permanent exhibition in the university museum, and not for sale, were entitled to free entry under a similar provision for articles "in illustration of the progress of the arts, science, or manufactures," in paragraph 759 of the tariff act of 1890.

Manifestly such a collection would appeal to a limited portion of the American people, which is generally true of most of the articles imported under said paragraph 1808 of the Tariff Act of 1930. It is a well-known fact that at the time of the instant importation there was a very large number of American-born citizens of Japanese descent

living on the Pacific Coast who naturally were interested in the development of Japanese culture and were properly entitled to the privileges granted by the provisions of said paragraph 1808.

Furthermore, paragraph 1808, after providing for the free entry of certain articles, requires that bonds shall be given for the payment of duties upon "such articles as shall not be exported within six months of such importation." There is some question as to whether the collector is entitled to collect duties on articles after the same have been admitted free under this paragraph, except on the one ground specified in the statute, viz, failure of the importer to export said articles within the specified time.

Article 435 (e) of the Customs Regulations of 1937, as amended by T. D. 49658, provides in part as follows:

After the completion of the entry and the filing of the bond, the articles may be released to the importer. Upon compliance with the conditions of the bond the entry shall be liquidated free of duty.

It is conceded that the merchandise at bar was exported within the 6 month's period, and in our opinion no duty should have been collected under the circumstances. As stated by counsel for the plaintiff, paragraph 1808 never was intended to be a means to entrap the unwary, and yet that is exactly what happened in the instant case. The goods were temporarily brought to this country and the importer was permitted to make a free entry in the belief that he could remove them from this country within the 6 month's period without the payment of duty. Certainly when the entry was accepted the importer had the right to expect that he would not be charged with duty provided he removed the goods from this country within the prescribed 6 month's period. Undoubtedly, the merchandise never would have been entered if the importer believed that it would be dutiable.

The entire record clearly discloses that the customs officials themselves were somewhat confused as to the proper interpretation of paragraph 1808, and the final action of the collector at Seattle in assessing duty on the merchandise was in our opinion based upon an erroneous construction of said paragraph.

Finally, the object of the tariff law is to levy duty upon articles which enter into the commerce of the United States and not upon goods temporarily brought here in good faith merely for temporary exhibition and then returned to the country of origin.

Upon all the facts and the law applicable thereto we hold the present merchandise to be properly entitled to free entry under said paragraph 1808, as alleged by the plaintiff. That claim is therefore sustained. All other claims are overruled.

Judgment will be rendered accordingly.